**In the Matter of the Revocation of the Driver's License of Richard J. HOPEWELL.**

**No. 14742.**

Supreme Court of South Dakota.

Nov. 20, 1985.

Sherri L. Sundem, Asst. Atty. Gen., Pierre, for appellee State of S.D.; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Wesley D. Schmidt, Sioux Falls, for appellant Richard J. Hopewell.

WUEST, Acting Justice.

Richard J. Hopewell (appellant) appeals from a trial court order revoking his driver's license for refusal to submit to a chemical analysis test, pursuant to our implied consent law, SDCL 32–23–10 and SDCL 32–23–11. We affirm.

On June 30, 1983, at approximately 11:30 p.m., while on routine patrol in Sioux Falls, South Dakota, Officer Joe Godsk (Godsk) observed a vehicle driving down the center of the street in a westerly direction. The vehicle veered from left to right and its wheels crossed the center line. Godsk followed the vehicle to an intersection, whereupon he observed the vehicle fail to stop before turning left on a red light. Godsk activated the red lights on his patrol car and the vehicle stopped after it veered to the right and went over a parking lot curb.

Officer Godsk testified that after appellant was stopped he shouted at Godsk and was generally upset and belligerent. Godsk secured appellant's identification and took him to the patrol car. While there, the officer noticed a strong odor of alcohol coming from appellant; that appellant's eyes were bloodshot and watery; and, that appellant's speech was slurred to some extent. At this point, the officer asked appellant to perform several field sobriety tests. The trial court found that prior to asking appellant to perform any of the tests, Officer Godsk adequately explained each test and demonstrated how to perform them. Further, the court found that appellant failed all of the sobriety tests, with the exception of the balancing on one foot test.

Thereafter, Officer Godsk asked appellant to take a protable breath test (PBT) and appellant refused. Appellant, a Sioux Falls attorney, stated that the officer had no probable cause and for the officer to either arrest him or let him go, whereupon Godsk placed appellant under arrest for driving under the influence of an alcoholic beverage (DUI). He then read appellant the implied consent card and asked him to take a breathalyzer test. Appellant responded, "absolutely not," and the officer advised him of the *Miranda* warnings. He then took appellant to the Sioux Falls Police Station, where appellant was again read the implied consent law, and again he refused the breathalyzer test. Appellant was booked pursuant to the arrest.

Appellant requested a blood test administered by someone other than the police and stated that he wanted time to research the law, inasmuch as he questioned the legality of the proceedings. After he refused the breathalyzer test, appellant was released from the police station. He returned sometime later and asked to take the breathalyzer test; however, because of an electrical storm which set off several burglar alarms in Sioux Falls, none of the officers were present to administer the test. Appellant went to McKennan Hospital and was finally given a blood test at approximately 2:40 a.m. At that time, the test indicated there was no alcohol content in his bloodstream.

On September 30, 1983, a hearing was held by the South Dakota Department of Public Safety (Department), regarding ap-

pellant's refusal to submit to the chemical analysis requested by Officer Godsk. On October 14, 1983, the hearings officer rendered a decision revoking appellant's driver's license for one year, pursuant to SDCL 32–23–10 and SDCL 32–23–11. At appellant's request, a trial de novo was held pursuant to SDCL 32–23–12 and the trial court affirmed the decision of Department and ordered appellant's driver's license be revoked.

Appellant appeals, contending that there is insufficient evidence to support the revocation of his driver's license, because the arresting officer had neither 1) probable cause to stop, 2) probable cause to arrest, or 3) did not make a lawful arrest under SDCL 32–23–1 prior to any request for a chemical test. We disagree.

Appellant contests Officer Godsk's testimony regarding appellant's performance on the sobriety tests administered, insisting that he passed the bulk of the tests, and that his poor performance on the test which required him to balance on one foot was due to chronic weakness in his left leg. We note, however, the arresting officer's testimony that he asked appellant whether he had any physical infirmities before administering the physical dexterity tests, and appellant replied that he did not. Upon an examination of the evidence and testimony, the trial court chose to adopt Officer Godsk's version of the incident. In its findings of fact, the trial court found appellant's testimony "confusing and unconvincing."

That the trier of fact judges the credibility of the witnesses is a frequently quoted rule which needs little further elucidation. *Gross v. Conn. Mut. Life Ins. Co.*, 361 N.W.2d 259 (S.D.1985); *Lukens v. Zavadil*, 281 N.W.2d 78 (S.D.1979); *Nicolaus v. Deming*, 81 S.D. 626, 139 N.W.2d 875 (1966); *Rowan v. Becker*, 73 S.D. 273, 41 N.W.2d 836 (1950). Suffice it to say, that in a case such as this, tried before the court, the trial judge has the ability to observe the demeanor of witnesses and determine the plausibility of conflicting testimony in a confrontational setting. With

regard to this court's review of the trial court's findings, we stated in *Gross*, 361 N.W.2d at 266, that:

> We do not look to substitute our judgment for that of the trial court, but to determine whether, after reviewing all of the evidence, the appellate court is left with a definite and firm conviction that a mistake has been committed. *Matter of Estate of Gosmire*, 331 N.W.2d 562 (S.D. 1983); *Matter of Estate of Nelson*, 330 N.W.2d 151 (S.D.1983). Further, we are not at liberty to change findings where the trial court has resolved conflicts in the evidence. *Mulder v. Tague*, 85 S.D. 544, 186 N.W.2d 884 (S.D.1971). (emphasis in original)

Here, the trial court was unconvinced by appellant's statements concerning his arrest for DUI on the evening of June 30, 1983, and upon a review of the record in this case we cannot say that the court was mistaken.

■ Under the circumstances of appellant's stop by Officer Godsk on the night in question, appellant's contention that the officer had no probable cause to stop him is of little merit. In *State v. Anderson*, 331 N.W.2d 568 (S.D.1983), we delineated the requisite grounds for a justifiable routine traffic stop. The *Anderson* Court cited *Marben v. State, Dept. of Public Safety*, 294 N.W.2d 697, 699 (Minn.1980), for the proposition that:

> [A] police officer may not stop a vehicle without a reasonable basis for doing so. Consistent with the principles set out in *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), *the officer must have a specific and articulable suspicion of a violation before the stop will be justified.*

331 N.W.2d at 570 (emphasis in original). *See also State v. Anderson*, 359 N.W.2d 887 (S.D.1984); *Whitson v. Department of Public Safety*, 346 N.W.2d 454 (S.D.1984).

In *Anderson*, 331 N.W.2d 568, the arresting officer observed the defendant veer into snowpacked areas of the road and weave back to the clear lane. We held that this activity afforded a specific and articu-

lable reason to stop defendant's car to determine whether he was driving under the influence of an alcoholic beverage. In the instant case, the arresting officer not only observed appellant's vehicle veer from the right to the left, but upon following appellant for several blocks the officer saw appellant fail to stop at a red light and make a left turn thereafter. Indeed, this constituted a clear infraction of our traffic laws and provided undeniable support for the stop as a routine traffic check.

Appellant further argues that Officer Godsk was without probable cause to arrest him. With regard to the grounds necessary for probable cause to arrest, we stated in *State v. Oyen*, 286 N.W.2d 317, 319 (S.D.1979), that:

'Officers are not required to know facts sufficient to prove guilt, but only knowledge of facts sufficient to show probable cause for an arrest or search. These are factual and practical considerations of every day life on which reasonable and prudent men, not legal technicians, act.'

*Quoting from State v. Hermandson*, 84 S.D. 208, 213, 169 N.W.2d 255, 258 (1969).

The thrust of appellant's argument is based on the blood test performed at McKennan Hospital some three hours after the initial stop. We addressed the issue of delayed alcohol testing in *Peterson v. State*, 261 N.W.2d 405, 408–09 (S.D.1977), stating:

[I]t is a 'well-established rule that the probative value of a chemical test for intoxication diminishes with the passage of time.' *Ent v. State, Department of Motor Vehicles*, 265 Cal.App.2d 936, 940, 71 Cal.Rptr. 726, 729 (1968). 'We are told the percentage of alcohol in the blood begins to diminish shortly after drinking stops, as the body functions to eliminate it from the system.' *Blow v. Comm. of Motor Vehicles*, 83 S.D. 628, 634, 164 N.W.2d 351, 354 (1969), quoting from *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). 'Such being true, the longer the test [is] delayed the more favorable the situation would become for the subject.' *Toms v. State*, 95 Okl.Cr. 60, 68, 239 P.2d 812, 820 (1952). Therefore, '[c]learly implied in the statute is the requirement that one of its described tests be submitted to and completed expeditiously; otherwise the purpose of the law would be frustrated.' *Smith v. Cozens*, 25 Cal.App.3d 300, 302, 101 Cal.Rptr. 787, 788 (1972). (emphasis in original)

■■■ Probable cause is not determined with the benefit of hindsight, it is determined by those factors present at the time of the arrest which would lead a reasonable person to believe that a crime has been committed. Here, appellant's manner of driving, his belligerent demeanor, the odor of alcohol about his person, his bloodshot and watery eyes, and the results of the sobriety tests administered, are practical and factual considerations which we believe would warrant a reasonable and prudent person to think that appellant had been driving under the influence of an alcoholic beverage. Thus, we hold that the officer had probable cause to arrest appellant.

■■■ Finally, appellant attacks the constitutionality of SDCL 32–23–1.2 by arguing that the statute is constitutionally deficient because it permits search and seizure without any constitutional safeguards. However, appellant refused to submit to the portable breath test under the statute, and is therefore unaffected by it. In *State v. Smith*, 88 S.D. 76, 78, 216 N.W.2d 149, 150 (1974), we held the defendant had no standing to attack the constitutionality of a particular statute citing *State v. Reed*, 75 S.D. 300, 303, 63 N.W.2d 803, 804 (1954), for the proposition that: " '[I]t is not a proper exercise of the judicial function * * * to determine the constitutionality of legislation when invalidity is urged by one not adversely affected.' " *See also State v. Strong*, 90 S.D. 652, 245 N.W.2d 277 (1976); *State v. Kirby*, 34 S.D. 281, 148 N.W. 533 (1914); *State v. Becker*, 3 S.D. 29, 51 N.W. 1018 (1892). Therefore, we decline to rule on this issue for lack of standing.

Finally, appellant contends that SDCL 32–23–11.1 is unconstitutional because it denies equal protection of the laws by coercing guilty pleas. This statute provides that if a person pleads guilty to driving under the influence of an alcoholic beverage under SDCL 32–23–1, his driver's license will not be revoked. Here also, appellant lacks standing to challenge the constitutional validity of the statute in issue. He entered a plea of not guilty to the charge of drunk driving. Subsequently, the charge was dismissed by the state's attorney's office. Since appellant was neither coerced nor affected by the statute, he lacks standing to attack its constitutionality.

Accordingly, the judgment of the trial court is affirmed.

FOSHEIM, C.J., MORGAN and HENDERSON, JJ., and HERTZ, Circuit Judge, acting as a Supreme Court Justice, concur.