### STATE of South Dakota, Plaintiff and Appellee,

v.

### Joseph J. ASSMAN, Defendant and Appellant.

### 14797.

Supreme Court of South Dakota.

Considered on Briefs Nov. 18, 1985.

Decided April 30, 1986.

Robert Mayer, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

John J. Simpson, Winner, for defendant and appellant.

HERTZ, Acting Justice.

Defendant appeals from a judgment of conviction for driving while intoxicated and driving when his privilege to do so was canceled, suspended or revoked. We reverse.

During the early morning hours of May 18, 1984, appellant Joseph J. Assman (Assman), was driving his pickup truck in an easterly direction on U.S. Highway # 18 on the Rosebud Reservation. At approximately 2:30 a.m., Assman was stopped by Bureau of Indian Affairs (BIA) Police Officer Louis Moran (Moran), about one and one-half miles outside of Mission, South Dakota. Moran and his fellow BIA officer Andrew Wayne Wilson (Wilson), had been watching Assman's pickup truck for approximately one-half mile before stopping it. Based on their observations, Moran pulled Assman over upon suspicion of DWI, a violation of SDCL 32–23–1.

Assman exited the vehicle by himself and produced a driver's license as requested by Moran, who then directed Assman to get back into the pickup truck. At this point, Moran testified that Assman's face was flushed and his eyes were bloodshot, he was unsteady on his feet, he slurred his words, and he smelled of alcohol. Thereafter, Assman was asked to perform some field sobriety tests. Inasmuch as Assman failed three out of the five tests administered to him, it was Moran's opinion that Assman was intoxicated. Moran then arrested Assman who was read both the Miranda and Implied Consent Warnings. He refused to submit to a blood-alcohol analysis.

After Moran placed Assman under arrest, he summoned the Tripp County Sheriff; a regular procedure when a BIA officer arrests a non-Indian. Additionally, Tribal Officer Robert Miller (Miller), came out to the scene of the arrest on his own accord. Miller had stopped Assman several weeks earlier and was aware of the fact that Assman had a restricted driver's license and a work permit which limited his driving privileges to between the hours of nine a.m. and nine p.m. After some discussion, Assman took the work permit out of his billfold and gave it to Miller.

The trial court conducted a motions hearing outside the presence of the jury prior to trial. At this hearing, defense counsel moved to suppress any evidence which resulted from Assman's arrest based on the fact that the tribal officers were not police officers of the State of South Dakota, that Assman was not an Indian, and consequently, the officers had no jurisdiction to arrest him. The trial court denied this motion.

Thereafter, defense counsel moved to suppress any evidence which pertained to Assman's refusal to submit to a blood test on grounds similar to those cited in the preceding motion. In denying this request, the trial court was persuaded by the fact that Moran had received the basic five week police training course, and thus, had the same qualifications as a South Dakota law enforcement officer. The trial court found that Moran was a valid law enforcement official, and in doing so, permitted the State to comment on Assman's refusal to take the blood test.

A Todd County jury trial was held on October 2, 1984, before the Honorable James W. Anderson in Winner, Tripp County, South Dakota. The jury found Assman guilty of driving a motor vehicle while under the influence of an alcoholic beverage in violation of SDCL 32–23–1, and guilty of driving a motor vehicle upon a public highway in South Dakota at a time when his privilege to do so was revoked in violation of SDCL 32–12–65.

The principal question before this court is whether Moran was a "law enforcement officer" within the meaning of SDCL 32–23–10, and thereby authorized to give the Implied Consent Warning to a non-Indian in compliance with SDCL 32–23–10.1. Assman contends that he had no duty to answer an unauthorized policeman after being requested to submit to a blood test, and that his refusal to do so, should not have been used against him at trial. The State of South Dakota (State), conceded that at the time of Assman's arrest, Officer Moran had not been cross-deputized by the county. State further conceded that the arrest took place on a portion of South Dakota public highway # 18 which is located on the Rosebud Indian Reservation.

We initially examine whether SDCL 22–1–2(20) or SDCL 23–3–27 should be used to define "law enforcement officer" as that term is used in SDCL 32–23–10.

SDCL 32–23–10 * provides, in essence, that any person who operates a motor vehicle in this state has given his implied consent to a chemical analysis of his blood or breath provided that the test is administered at the direction of a law enforcement officer pursuant to a lawful arrest. SDCL

---

* SDCL 32–23–10 provides:

Any person who operates any vehicle in this state is considered to have given his consent to a chemical analysis of his blood, breath or other bodily substance to determine the amount of alcohol in his blood, as provided in § 32–23–7, and to determine the presence of marijuana or any controlled drug or substance, provided that the test is administered at the direction of a *law enforcement officer* having lawfully arrested the person for a violation of § 32–23–1.

The person shall be requested by *the officer* to submit to the analysis and shall be advised by *the officer* that: (1) If he refuses to submit to the chemical analysis, none may be given; (2) If he refuses to submit to the chemical analysis, his driver's license shall be revoked for one year, unless pursuant to § 32–23–11.1 he pleads guilty to a violation of § 32–23–1 prior to a revocation order being issued; and (3) He has the right to have a chemical analysis performed by a technician of his own choosing at his own expense, in addition to the test requested by *the officer*. (Emphasis added.)

32–23–10.1 states that, "[i]f a person refuses to submit to chemical analysis of his blood, ... and that person subsequently stands trial for driving while under the influence of alcohol ... such refusal may be admissible into evidence at the trial." SDCL 32–14–1 defines terms that are used in Chapter 32, among others. As such, SDCL 32–14–1(32) defines "law enforcement officer" as that term is defined in SDCL 23–3–27.

Assman contends that the definition of "law enforcement officer" contained in the preceding statute should be used in conjunction with SDCL 32–23–10. To that end, SDCL 23–3–27 provides:

"Law enforcement officer" means any employee or officer of the state or any political subdivision thereof and who is responsible for the prevention and detection of crime and the enforcement of the criminal or highway traffic laws of this state.

Assman argues, therefore, that since Moran was not a "state" law enforcement officer as required by SDCL 23–3–27, then he obviously could not make a lawful arrest as a state officer, nor could he request Assman to submit to a blood test.

By contrast, the State asserts that the definition found in SDCL 22–1–2(20) is the applicable one. This statute defines "law enforcement officer" as "an officer or employee of the state or any of its political subdivisions or of the United States ... who is responsible for the prevention or detection of crimes, for the enforcement of the criminal or highway traffic law of the state, or the supervision of confined persons convicted of a crime[.]" The State contends that the broader definition of "law enforcement officer" found in SDCL 22–1–2(20) includes those people, such as Moran, who serve the United States government in a law enforcement capacity.

The State's contention must fail, however, because the definition of "law enforcement officer" at SDCL 22–1–2(20) applies only to those matters contained in Chapter 22, or to other statutes where a penalty is prescribed. SDCL 32–23–10 does not prescribe a penalty and thus, could not be included within the perimeters of the definition of law enforcement officer as set out in SDCL 22–1–2(20). It follows, therefore, that the State could not rely on this definition for a prosecution involving SDCL 32–2. Since SDCL 32–14–1(32) expressly makes the definition as found in SDCL 23–3–27 applicable to Chapter 32, Assman's claim is well founded in light of the fact that the State conceded that Moran was not a "law enforcement officer" as described in SDCL 23–3–27.

Moran could, nevertheless, make a valid citizen's arrest. See: State v. McDonald, 260 N.W.2d 626 (S.D.1977); In Re Mehrer, 273 N.W.2d 194 (S.D.1979). However, this is not enough to satisfy SDCL 32–23–10 which requires not only a lawful arrest, but it also requires that the direction to take the test come from a "law enforcement officer," which Moran, admittedly, was not. It must be specifically noted here that SDCL 32–23–10 reminds us repeatedly that the arrestee shall be requested by "the officer" to submit to the analysis and shall be advised by "the officer" of the full context of the Implied Consent Warning. Even conceding that Moran had the proper police training as found by the trial court, this simply is not enough to comply with SDCL 32–23–10 which required Moran to be a "law enforcement officer" as defined by SDCL 23–3–27, before he could request Assman to take the blood test.

By enforcing the Implied Consent Law, the legislature intended to remove drinking drivers from the road but only by fair and accurate means. See: Peterson v. State, 261 N.W.2d 405 (S.D.1977). Although there is ample evidence in this record to indicate that Assman was driving under the influence, we nevertheless find that his conviction must be reversed. To do otherwise would ignore the plain direction and meaning of the applicable statutes.

In view of this reversal, we need not reach the remaining issues raised on appeal.

Accordingly, we reverse the decision of the trial court, and direct that the appellant's conviction be reversed.

All the Justices concur.

SABERS, J., not having been a member of the Court at the time this action was submitted to the Court, did not participate.